UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:15-cr-00081-TWP-DKL |
| ) | |
| ABEL COVARRUBIAS, ) | |
| ) | |
| Defendant. ) | |

**ORDER ON MOTION TO SUPPRESS**

This matter is before the Court on Defendant Abel Covarrubias's ("Covarrubias") Motion to Suppress. (Filing No. 29.) Covarrubias seeks to suppress any and all evidence and statements made and obtained following the warrantless search of a Saturn Vue automobile by New Mexico State Troopers, following a consent to search by the car carrier driver, Dorjbal Jantsanbal ("the Driver"). The Court held a hearing on Covarrubias's motion on December 9, 2015. Pursuant to Federal Rule of Criminal Procedure 12(d), the Court now states its findings of fact and conclusions of law. For the reasons set forth below, the Motion to Suppress is **DENIED**.

**I. BACKGROUND**

On March 26, 2015, New Mexico State Police Patrolman Joseph Garcia ("Officer Garcia") and his canine partner, Fiba, were traveling on Interstate 40, an interstate that runs from the west to the east coast, and is known to be a highly traveled route for drug traffickers attempting to transport narcotics from the southwest border to points east. Officer Garcia has been an officer with the New Mexico State Police for approximately seven years and a canine handler for just under five years.

Officer Garcia observed a car hauler trailer that was displaying an improper license plate (the sixth digit of the license plate was partially missing/unreadable). He stopped the trailer in McKinley County, New Mexico for the license plate violation. During the course of the stop, he noticed that a white Saturn Vue on the trailer had no license plate. Other vehicles on the trailer were also unplated, however, those vehicles were not in the officer's view. (*See* Def. Exhibit A.)

Officer Garcia asked the Driver to show him the appropriate paperwork for the vehicles. Upon receiving the paperwork, he noted that the bill of lading for the white Saturn Vue showed that the car was being transported from Victorville (San Bernardino County), California to Indianapolis, Indiana. (Gov. Exhibit 1.) He further noted that the shipper was listed as Juana Martinez and the receiver was listed as Juan Pablo. The same telephone number, (760) 269-5495, was listed for both the shipper and the receiver.

Further inquiry with the Driver revealed that the white Saturn Vue was picked up from a Walmart parking lot, because the female who dropped the car off indicated that her neighborhood was too small for the car hauler to pick up the car. The Driver also indicated that when he picked up the vehicle, the female told him that "the license plate was inside the car." Officer Garcia asked the Driver if he would retrieve the license plate from inside the car. The vehicle was locked, however, the Driver had the keys to the vehicle. Once the car was opened, Officer Garcia noted multiple air fresheners inside the vehicle, and another one hanging from the rearview mirror. No license plate was located inside the vehicle. A check of the Vehicle Identification Number revealed that neither the shipper nor receiver was the registered owner of the vehicle; rather, Francisco Moreno from Lynnwood [sic], California was the registered owner. Officer Garcia ran a Google Maps search of the shipping address which appeared to him to have sufficient space for a car hauler to travel to and pick up the vehicle.

At that point, based on his training and experience, Officer Garcia believed that drug trafficking activity might be associated with the Saturn Vue. He asked the Driver for permission to search the Saturn Vue and the Driver gave consent. Officer Garcia then deployed his canine partner, Fiba, to the interior of the Saturn Vue, and Fiba alerted for the presence of narcotics. Ultimately, Officer Garcia found 40 bags with 46 pounds, or approximately 20,000 grams, of methamphetamine located within a non-factory compartment built into the console of the Saturn Vue.

Given the very large quantity of methamphetamine involved, Department of Homeland Security Investigations ("HSI") agents responded to the scene. The Driver agreed to assist in the controlled delivery of the vehicle. The methamphetamine was removed from the Saturn Vue, and the car hauler continued on the road towards Indianapolis to meet up with HSI agents from Indianapolis.

Upon arriving in Indianapolis on March 28, 2015, the HSI agents put one package of methamphetamine back into the Saturn Vue. They directed the Driver to call the telephone number that was listed for both the shipper and the receiver of the Saturn Vue. Initially unsuccessful, the Driver ultimately received a call back from someone using a 317 area code telephone number. The Driver was told to deliver the Saturn Vue to the address listed on the shipping paperwork, 1272 Standard Avenue, Indianapolis, Indiana.

On the evening of March 27, 2015, the car hauler trailer was observed parking near the residence of 1272 Standard Avenue, and the Saturn Vue was unloaded. A few minutes later, officers saw Covarrubias and another individual, Henry Tillberry ("Tillberry"), arrive at 1272 Standard Avenue, in a silver Honda. Officers observed Covarrubias pay the Driver some money, then get into the Saturn Vue and drive away. He was followed by the silver Honda, which was

driven by Tillberry. The two vehicles traveled to Tillberry's residence at 2773 Maywood Road, Indianapolis, Indiana. Covarrubias parked the Saturn Vue in the driveway of the residence, then left the residence as the driver and sole occupant of the silver Honda. Officers followed Covarrubias until he pulled into a McDonald's parking lot, at which point they approached and placed him under arrest. The key to the Saturn Vue was in Covarrubias's pocket when he was arrested and four cell phones were found in the silver Honda.

Covarrubias was informed of his *Miranda* rights, which he acknowledged and then waived in writing. In the interview that followed, he admitted that he had gone to meet the car hauler at a residence on Standard Avenue, driving his silver Honda. He stated that his friend, Henry Tillberry, had come along with him. Covarrubias admitted that he paid the Driver $700.00 upon receiving the Saturn Vue at the Standard Avenue address, and that he told the Driver that his name was "Juan Pablo." He admitted that he had driven the Saturn Vue to Tillberry's house and stated that he had picked up the Saturn Vue because it contained methamphetamine. Covarrubias explained that he was going to be paid $2,000.00 to pick up the car containing methamphetamine, but Tillberry was the person for whom the shipment of methamphetamine was destined. He explained that he did not know where the methamphetamine was hidden within the vehicle, or how much methamphetamine was in the vehicle.

Records from the State of California Bureau of Motor Vehicles indicate that the last registered owner of the Saturn Vue was Francisco Moreno, 11121 Elm Street, Lynwood, California. Investigation conducted by HSI Special Agent Daron Babcock ("Special Agent Babcock") revealed that the shipper's address, 19830 Bayshore in Victorville, California, is a bogus address. Moreover, the recipient address, 1272 Standard Street, was actually 1272 Standard Avenue, and appeared to be an unoccupied, vacant residence.

Special Agent Babcock has also obtained the paperwork of the Vehicle Inspection Report and the Shipping Invoice that caused the Saturn Vue to be shipped from California to Indiana. (*See* Gov. Exhibit 1.) Pursuant to the Shipping Invoice, the shipper is put on notice that the car being shipped will be driven by the transporter, as listed in paragraph 4 of the Shipping Invoice: "Auto Shipping Group, Inc. hereby notifies shipper that their vehicle will be driven on and off the transporter, or to and from the transporter at the pickup or delivery site." Covarrubias was subsequently indicted by grand jury and charged with possession with intent to distribute controlled substances in violation of Title 21, U.S.C., Section 841(a)(1).

## II. DISCUSSION

Covarrubias asks the Court to suppress all evidence and statements because Officer Garcia did not have probable cause to stop and search the Saturn Vue and the Driver did not have authority to consent to its search. In response, the Government argues that Covarrubias has no standing to contest the stop or search. Because it is dispositive, the Court will first address the issue of standing.

**A.** <u>Standing</u>

The Fourth Amendment protects "against unreasonable searches and seizures." U.S. CONST. Amend. IV. "Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted." *Rakas v. Illinois*, 439 U.S. 128, 133-34 (1978). A person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property (such as someone else's vehicle) has not had any of his Fourth Amendment rights infringed. *United States v. Yang*, 478 F.3d 832, 835 (7th Cir. 2009). *Id.*, at 134. A defendant objecting to a search as violative of the Fourth Amendment bears the burden of proving that he had a legitimate expectation

5

of privacy in the area searched. *United States v. Yang*, 478 F.3d 832, 835 (7th Cir. 2009). To challenge a search, the defendant must show that he had both a subjective and objective expectation of privacy in the item searched. *United States v. Haywoo*d, 324 F.3d 514, 515-16 (7th Cir. 2003). A warrantless entry is valid when it is based upon the consent of a third party whom the police, at the time of entry, reasonably believed possessed authority over the premises." *United States v. Mercer*, 541 F.3d 1070, 1074 (11th Cir. 2008).

Here, Covarrubias has neither a subjective nor objective expectation of privacy in the Saturn Vue. The car appears to be owned by a Francisco Moreno. (Gov. Exhibit 3.) Further, Covarrubias acknowledged that he only claimed to be—but was not—Juan Pablo, the named recipient of the car, and the shipper of the car was a female named Juana Martinez. As such, Covarrubias has no apparent ownership or possessory right in the vehicle, as either the shipper or receiver and therefore, no standing to object to the search of the car.

Additionally, Covarrubias and/or Juan Pablo had no expectation of privacy in the Saturn Vue after it was turned over to the shipping company. The Driver of the trailer was given the keys to the Saturn Vue and the shipping invoice specifically gave notice that the vehicle doors would be opened and the vehicle itself driven on and off the transporter. *See*, *United States v. Crowder*, 588 F.3d 929 (7th Cir. 2009) (individual who shipped a cocaine laden car owned by a third party has no standing to object to the search of that car by law enforcement.)

Covarrubias argues that the circumstances of this case are distinguished from *Crowder* in that the vehicle in *Crowder* was unlocked, while the doors to the Saturn Vue were locked. He asserts that the facts in this case are more aligned to those in *United States v. Villarreal*, 963 F .2d 770 (5th Cir. 1992). The *Villarreal* court found a reasonable expectation of privacy in a 55-gallon sealed container shipped by common carrier. However, the facts in this case are nearly identical

to those in *Crowder*. The locked versus unlocked doors is a distinction without a difference. A sealed barrel is a closed container, whereas here, the Driver was provided the keys to the Saturn Vue and the shipping invoice clearly stated that the Driver would be entering the vehicle with those keys to move the vehicle on and off the transport trailer. As such, the shipper, Covarrubias and/or Juan Pablo lacked a reasonable expectation of privacy.

Covarrubias's post-*Miranda* statements further demonstrate his lack of standing to object to a search of the Saturn Vue. After being *Mirandized*, Covarrubias explained that he was simply a courier; that is, he was going to be paid $2,000.00 to pick up the car containing methamphetamine, but that Tillberry was the main person for whom the shipment of methamphetamine was destined. Covarrubias's statement that he was only a "mule" temporarily employed to receive the Saturn Vue and park it at Tillberry's residence, further dilutes any ownership interest he might have over the Saturn Vue. Because Covarrubias is not the registered owner of the vehicle, and he is not the named receiver—Juan Pablo—and Tillberry was the intended recipient of the methamphetamine, Covarrubias had no expectation of privacy in the Saturn Vue and thus no standing to object to the March 26, 2015 search of the vehicle.

**B.** **The officer had reasonable suspicion to request consent to search the vehicle.**

Covarrubias next asserts that there was no reasonable suspicion to justify Officer Garcia's stop of the trailer or bases to request consent from the Driver to search the Saturn Vue. The Court must disagree. Even if Covarrubias had standing to object, the stop and search complied with the requirements of the Fourth Amendment.

An investigative stop is a 'brief detention which gives officers a chance to verify (or dispel) well-founded suspicions that a person has been, is, or is about to be engaged in criminal activity." *United States v. Bullock*, 632 F.3d 1004, 1014–15 (7th Cir. 2011). When determining whether a

police officer had reasonable suspicion to stop or further detain an individual, "the district court must evaluate the 'totality of the circumstances' to assess whether the determining officer has a 'particularized and objective basis' for suspecting illegal activity." *United States v. Zambrana*, 428 F.3d 670, 675 (7th Cir. 2005). "Reasonable suspicion is more than a hunch but less than probable cause and considerably less than preponderance of the evidence. It requires some minimal level of objective justification for making a stop given the totality of the circumstances." *United States v. Sokolow*, 490 U.S. 1, 7 (1989); *Jewett v. Anders*, 521 F.3d 818, 823 (7th Cir. 2008). In evaluating the reasonableness of an investigatory *Terry* stop, a court must first examine whether the officer's action was justified at its inception; the court must then determine whether it was reasonably related in scope to the circumstances which justified the interference in the first place. *Terry v. Ohio*, 392 U.S. 1, 20 (1968); *see Jewett*, 521 F.3d at 823.

Here, Officer Garcia stopped the car hauler trailer because one of the numbers on the license plate was obscured, which is a violation of New Mexico Statute 66-3-18. (Def. Exhibit G.) His subsequent inquiry with the Driver regarding oddities in the paperwork raised a reasonable suspicion which supported his request that the Driver consent to a search. It was reasonable for Officer Garcia to believe the Driver had authority to consent to a search. The Driver had the keys to the vehicle, and the shipping invoice which noted that his authority to drive the vehicle on and off the transporter. "A third party has apparent authority to consent to police search of property and waive Fourth Amendment requirements when it would appear to a reasonable person, given the information that law enforcement possessed, that the individual had common authority over the property…." *Crowder* at 767, (*citing United States v. James*, 571 F.3d 707, 714 (7th Cir. 2009)). Accordingly, even if Covarrubias had standing to object to the search, the Court finds that

8

Officer Garcia had a reasonable suspicion for the investigative stop and the warrantless search complied with the requirements of the Fourth Amendment.

### III. CONCLUSION

For the reasons stated above, Covarrubias's Motion to Suppress (Filing No. 29) is **DENIED.**

**SO ORDERED.**

Date: 12/28/2015

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

James Voyles
VOYLES ZAHN & PAUL
jvoyles@vzplaw.com

Jenny Lukemeyer
VOYLES ZAHN & PAUL
jlukemeyer@vzplaw.com

Michelle Brady
UNITED STATES ATTORNEY'S OFFICE
michelle.brady@usdoj.gov